IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 01-75 |
| | ) | See Civil Action No. 05-171 |
| JOSEPH DAVID ZEMBA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

BLOCH, District J.

Petitioner, on February 14, 2005, filed a pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and brief in support thereof (Doc. No. 108). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 110), filed on March 8, 2005, and Petitioner's "Traverse of Government's Response to § 2255" (Doc. No. 113), filed on September 6, 2005, the Court denies Petitioner's motion for the reasons set forth below.

I.      **Background**

On April 25, 2001, an Indictment was returned by the Grand Jury charging Petitioner with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. No. 1). Petitioner's trial on this charge commenced on July 30, 2001, in the United States District Court for the Western District of Pennsylvania. On August 2, 2001, the jury returned a guilty

1

verdict, and the Court ordered a presentence investigation report ("PIR") to be prepared. (Doc. No. 63).

The Probation Officer, in the PIR, concluded that Petitioner was an armed career criminal under Section 4B1.4 of the United States Sentencing Guidelines, subject to a sentencing range of 235 to 293 months. After objections were filed by the parties, the Court, on October 3, 2001, issued its Tentative Findings and Rulings Concerning Disputed Facts or Factors. (Doc. No. 76). The Court confirmed the guideline sentencing range of 235 to 293 months and declined to depart upward on the basis of Petitioner's criminal history. On October 11, 2001, the Court sentenced Petitioner to 293 months' imprisonment, to be served consecutive to the state sentence that Petitioner was then serving, and to be followed by five years' supervised release. (Doc. No. 80).

Petitioner subsequently appealed and challenged his conviction, raising several arguments before the Third Circuit Court of Appeals: (1) that he was denied his Sixth Amendment right to confront witnesses when the District Court foreclosed inquiry into or disclosure of the pending Accelerated Rehabilitative Disposition charge against witness Mary Jane Beaken; (2) that the District Court violated his Sixth Amendment right to compulsory attendance of a witness by refusing to grant him a continuance to secure the attendance of Officer Eric Zdobinski as a witness; (3) that he was denied due process by the District Court's refusal to give anything

more than a generalized credibility instruction to the jury; (4) that imposing a sentence that exceeded the statutory maximum term of imprisonment for the violation charged in the indictment violated his Fifth and Sixth Amendment rights pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); and (5) that the statute under which he was convicted, 18 U.S.C. § 922(g)(1), is unconstitutional.  On February 28, 2003, the Third Circuit affirmed Petitioner's conviction and the findings of the District Court.  Petitioner filed a petition for a writ of certiorari on July 18, 2003, which was denied on October 6, 2003.

On February 14, 2005, Petitioner, acting <u>pro se</u>, filed the present motion pursuant to 28 U.S.C. § 2255.  The Court will address the claims raised in this motion below.[1]

---

[1]   On October 7, 2004, Petitioner filed a "Preliminary Motion under 28 U.S.C. Section 2255," essentially seeking an extension of time to file his Section 2255 motion.  (Doc. No. 102).  On October 12, 2004, this Court issued an Order treating Petitioner's motion as a motion for an extension of time and granted said motion, extending the time for Petitioner to file a brief in support of his motion until December 12, 2004.  On this same date, in accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist.  With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA.  On December 15, 2004, this Court received notice from Petitioner dated November 30, 2004, advising
(continued...)

II.        Discussion

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Petitioner brings his pro se motion pursuant to 28 U.S.C. § 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence." An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Petitioner raises eight grounds upon which he claims he is entitled to relief under Section 2255. The first ground, which contains the majority of his claims, is that Petitioner was denied

---

[1](...continued)
the Court that Petitioner wished to withdraw his original motion and file an all-inclusive motion. The Court granted this motion, and Petitioner filed the present motion.

his Sixth Amendment right to effective assistance of counsel. The second is that this Court erred in some of its rulings in this case. The third ground is prosecutorial misconduct. The fourth and fifth are similar - cumulative error and constructive ineffective assistance of counsel. The seventh ground relates to alleged errors made by the Third Circuit Court of Appeals. The sixth and eighth both raise claims under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543 U.S. 220 (2005). For the reasons that follow, the Court finds no merit in any of Petitioner's claims and finds that the record conclusively shows that he is not entitled to relief under Section 2255 on any of the grounds he alleges.[2]

## A.   Ineffective Assistance of Counsel

As noted, the majority of Petitioner's claim relate to the alleged ineffective assistance rendered by his trial counsel. A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996)

---

[2]   Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

(citing <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Sistrunk</u>, 96 F.3d at 670 (citing <u>Strickland</u>, 466 U.S. at 689-90) (internal quotation marks and citations omitted).  "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

Petitioner raises 16 separate grounds on which he alleges his counsel, W. Penn Hackney, was constitutionally ineffective. Many of these, though, are integrally intertwined and will be treated together below.  Further, it is important to distinguish Petitioner's claims regarding his trial counsel and those regarding this Court.  Although Petitioner attempts, under the guise of alleging ineffective assistance of counsel, to challenge certain

rulings made by this Court in this case, the Court emphasizes that ineffective assistance of counsel claims cannot be used to indirectly challenge prior rulings in this case; such claims must relate to the performance of counsel. Claims regarding this Court's decisions are addressed <u>supra</u> at Part II.B of this Opinion.

### 1. <u>Failure to Consult</u>

Petitioner's first allegation in Ground One, set forth in subpart (a), is that he was denied effective assistance of counsel because counsel failed to consult with him during pretrial detention concerning the Government's case against him, and to obtain his input concerning two Government witnesses. However, Petitioner has failed to produce evidence of unreasonable conduct or resulting prejudice, and his argument, therefore, has no merit.

It is well-established that an attorney must not only consult with his or her client with respect to certain fundamental decisions, such as what plea to enter, whether a jury trial should be waived, whether the client will testify, whether to take an appeal, and whether to waive the right to counsel, he or she must abide by the client's decision as to those issues. <u>See</u> <u>Government of Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1433 (3d Cir. 1996). "With the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client." <u>Jones v. Barnes</u>, 463 U.S. 745, 753 n.6 (1983). Therefore, if a decision

7

falls within the realm of "strategic decisions" to be made by the attorney, a reviewing court may find whatever decisions that attorney made "to be sufficiently deficient only if he either failed completely to consult with his client, or if the decision was itself inept or incapable of interpretation as sound." United States v. Narducci, 18 F. Supp. 2d 481, 493 (E.D. Pa. 1997).

Petitioner did not provide evidence that counsel ignored his wishes in regard to any fundamental decisions nor that he completely failed to consult with Petitioner. He, of course, raises numerous issues regarding alleged ineffective conduct by counsel during this case, but does not indicate that a failure to consult with him was the reason for this ineffective conduct. In fact, Petitioner raises the issue of counsel's failure to consult, but then essentially abandons the issue in his brief, neglecting, in his lengthy filing, to set forth any evidence regarding the amount of, timing of, and quality of his consultation with counsel. Accordingly, Petitioner has failed to produce evidence of objectively unreasonable conduct and any resulting prejudice, thereby failing to satisfy either prong of the Strickland analysis as to this claim.

## 2. Failure to Obtain Testimony of Officer Zdobinski

Petitioner's claims in subparts (b) and (c) both relate to counsel's failure to have Officer Eric Zdobinski testify at trial. Specifically, Petitioner claims in subpart (b) that counsel failed

8

to obtain the services of an investigator to locate "a police officer" who could refute the Government's witnesses' testimony and claims in subpart (c) that counsel failed to subpoena this witness.[3] Petitioner's brief makes it clear that these allegations refer to Officer Zdobinski.   As the record shows, this claim is without merit.

Ordinarily, decisions on which witnesses to call to testify are strategic decisions entrusted to counsel; counsel need not call every suggested witness – only those likely to assist their case.   See United States v. Merlino, 2 F. Supp. 2d 647, 662 (E.D. Pa. 1997).   In this case, however, Petitioner's counsel's failure to call Officer Zdobinski was obviously not strategic in nature.   As Petitioner alleges, one of the issues being raised by the defense in this case was the alleged sexual relationship between two of the Government's witnesses, John Waldron and Mary Jane Beaken, a

---

[3]    In addition, subpart (e) provides that counsel was ineffective, inter alia, because he "[f]ail[ed] to properly establish and bring before the jury that the two key government witnesses against Petitioner were biased, thus allowing evidence to show both witnesses lied about their . . . sexual relationship." Likewise, subpart (f) provides that counsel was ineffective in, inter alia, "failing to develop a proper foundation enabling the introduction into evidence" of the "paramour" relationship between these two Government witnesses.   As discussed below, Officer Zdobinski's testimony purportedly related to this relationship. Petitioner does not dispute that counsel cross examined these witnesses on this issue, and, indeed, he did.   (Transcript of Trial Proceedings Continuing on Tuesday, July 31, 2001 (Doc. No. 91) ("July 31 Tr.") at 63-64, 107).   Accordingly, these claims appear to also relate to counsel's failure to secure the testimony of Officer Zdobinski.

relationship which the defense believed could demonstrate bias in their testimony against Petitioner.  Indeed, counsel questioned both Waldron and Beaken on this subject on cross examination.  However, both denied such a sexual relationship existed.  (July 31 Tr. at 63-64, 107).  Petitioner's counsel alleged that Officer Zdobinski could impeach this testimony based on a report he had completed on February 22, 1999 relating an interview with Waldron that was part of the pretrial discovery in this case.

There appears to be no question that counsel was aware of this witness prior to the trial.  However, counsel, by his own admission, did not attempt to locate and subpoena Officer Zdobinski until after the second day of trial.  (Transcript of Trial Proceedings Continuing on Wednesday, August 1, 2001 (Doc. No. 90) ("Aug. 1 Tr.") at 9).  As to why he had waited to search for this witness, counsel stated merely, "I didn't know I needed [him] until I heard John Waldron's testimony."  (July 31 Tr. at 153).  Ultimately, counsel was unable to secure the attendance of the witness by the time he had otherwise presented his case.  He sought a continuance so as to produce Officer Zdobinski, but the Court denied this request.  (Aug. 1 Tr. at 24-28).

Considering that the issue of the alleged sexual relationship between Waldron and Beaken was one counsel had intended to introduce at trial, and since he was aware of Officer Zdobinski and his report, it was unreasonable for counsel to have waited until

10

after the trial had commenced to locate and subpoena the officer.[4]
Counsel should have at least contemplated the possibility that
Waldron and Beaken would deny a sexual relationship and should have
been prepared to impeach that testimony.  The record, therefore,
arguably at least allows for the possibility that counsel, with
proper investigation and preparation, would have and should have had
the witness available to testify.  However, even assuming _arguendo_
that counsel's performance fell below the objective standard of
reasonableness, Petitioner's argument fails because the record
conclusively shows that there is no reasonable probability that, but
for counsel's conduct, the result of the proceeding would have been
different.

The first reason Petitioner cannot demonstrate prejudice
is that the record conclusively shows that the Court would not have
permitted Officer Zdobinski to testify regardless of the conduct of
Petitioner's counsel.   Petitioner's counsel sought to introduce
Officer Zdobinski's testimony both as proof of a prior inconsistent
statement under Federal Rule of Evidence ("FRE") 613(b) and to prove
bias.[5]  He proffered that this testimony would demonstrate that
Waldron had told Officer Zdobinski on February 22, 1999, that he had

---

[4]     Indeed, he never did properly subpoena Officer Zdobinski.
(Aug. 1 Tr. at 26).

[5]     As the Court noted at the trial, Zdobinski's testimony was
evidence of a prior inconsistent statement only as to Waldron, not
as to Beaken.   However, his testimony could have been evidence of
bias as to both witnesses.   (Aug. 1 Tr. at 26-29).

had sex with Beaken within a week and a half of that date, and that this testimony would impeach Waldron's and Beaken's denial that they had had sex at that time.   (Aug. 1 Tr. at 9-10).   This Court, however, excluded Officer Zdobinski's testimony on two grounds. First, the Court found his testimony inadmissible under FRE 613(b) because Waldron had not been provided with the opportunity to explain or deny the alleged inconsistent statement.   (Aug. 1 Tr. at 27).   Furthermore, the Court exercised its discretion to exclude extrinsic evidence of a prior inconsistent statement under <u>United States v. Young</u>, 248 F.3d 260 (4th Cir. 2001),[6] and further held that admission of the evidence would be prohibited pursuant to FRE 403 because, even though a prior inconsistent statement by Waldron regarding his and Beaken's sexual relationship may have been relevant, its probative value was minimal and outweighed by considerations of undue delay and waste of time.   (<u>Id.</u> at 27-28).

As to the first basis on which the Court excluded the testimony, Petitioner may have a valid argument that the Court's ruling was due to his counsel's deficient performance.   Petitioner argues, in subpart (f), that his counsel failed to lay the proper foundation for the admission of Officer Zdobinski's testimony.   FRE 613(b) provides that extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is

---

[6]     In fact, the Court indicated that "even if all the fundamental elements of Rule 613 are met," it would so exercise its discretion. (<u>Id.</u> at 27).

afforded an opportunity to explain or deny the same and the opposing party to interrogate the witness thereon, or the interests of justice otherwise require. Petitioner's counsel failed to question Waldron about the inconsistent statement on cross examination and therefore provide him with the opportunity to explain or deny the alleged inconsistent statement. Thus, the Court's decision that the testimony was inadmissible under Rule 613(b), at least arguably, was the result of counsel's failure to lay a proper foundation for the admission of the testimony.

However, the other basis upon which the Court excluded the testimony was not the result of counsel's deficient performance. A district court may exercise its discretion to exclude extrinsic evidence under Rule 613(b) when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Young, 248 F.3d at 268. As the Court indicated, it had this discretion "even if all the fundamental elements of Rule 613 are met." Further, to the extent that the testimony was offered to demonstrate bias, the Court found it inadmissible under FRE 403. In so finding, the Court held that the proffered testimony's probative value was minimal and outweighed by considerations of undue delay and waste of time.

As stated, counsel proffered that Officer Zdobinski's testimony would demonstrate that Waldron had told him on February 22, 1999, that he had had sex with Beaken within a week and a half of that date. Waldron had first accused Petitioner of the shooting at issue much earlier than that - in August of 1998. (July 31 Tr. at 103). While he later implicated Beaken along with Petitioner, he had implicated Petitioner long before the date on which he allegedly had sex with Beaken. Evidence of sex with Beaken at a date considerably later than the one on which Waldron had first went to the authorities with his allegations regarding Petitioner had very little probative value.

As for Beaken, she did not implicate Petitioner in the shooting until interviewed by police in March of 1999, after having already been implicated in the shooting herself. (July 31 Tr. at 64). The fact that she had allegedly had sex with Waldron a month and a half earlier shed minimal light on the issue of bias and therefore had little probative value.

The Court balanced the minimal probative value of Officer Zdobinski's proffered testimony as to both Waldron and Beaken against the FRE 403 factors. The Court found that the undue delay and waste of time involved in having Officer Zdobinski testify substantially outweighed that minimal probative value.

It is important to note that the Court did not merely deny Petitioner's counsel's request for a continuance to produce Officer

14

Zdobinski; it found the officer's testimony to be inadmissible. The Court's decision was not based on the mere fact that the officer was not available to testify at the close of Petitioner's case; it was based, as discussed above, on the minimal probative value of the evidence and the delay and waste of time the testimony would cause. If the Court's concern was merely the witness' absence, it could have merely declined to continue the trial. The Court instead went out of its way to find that the testimony was inadmissible in any event. Accordingly, since the Court would have found the testimony inadmissible regardless of counsel's deficient performance, Petitioner cannot demonstrate that he was prejudiced by that performance.

Nonetheless, even if it could be established that there was a reasonable probability that, but for counsel's unprofessional errors, the Court would not have held Officer Zdobinski's testimony to be inadmissible and would have allowed him to testify, there would still not be a reasonable probability that the result of the proceeding would have been different. The Court found minimal probative value as to Officer Zdobinski's testimony as proffered by counsel. However, Officer Zdobinski's February 22 report demonstrates that his testimony would have been not at all as characterized by Petitioner's counsel at trial and by Petitioner in his motion and brief. Petitioner repeatedly claims that the officer's testimony could have demonstrated that Waldron and Beaken

15

were paramours with a unique sexual relationship that would have provided a motive to "gang up" on Petitioner. The officer's testimony would have done no such thing, and, indeed, would have even less probative value than the Court assumed in excluding the testimony at trial.

To establish prejudice under Strickland, Petitioner cannot rely on mere speculation as to what Officer Zdobinski's testimony would have been, but rather, must demonstrate what his actual testimony would be. See Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006). Here, while Petitioner does not present an affidavit or declaration from Officer Zdobinski regarding what his testimony would have been, he does attach the officer's report of his interview with Waldron. Petitioner does not really dispute that the officer's testimony would reflect the statements contained in this report. In the report, Officer Zdobinski indicates that Waldron told him that, at a party approximately a week and a half earlier, Beaken had been providing sexual favors to himself **and to Petitioner** in return for drugs. (Petitioner's Motion, Ex. E). In fact, the officer indicates that Waldron told him that Beaken "frequently engaged in similar activity with many partners." (Id.). He further indicates that Waldron had told him that an individual named Ray "must have fallen in love with Beaken due to her sexual favors and took her with him to continue the relationship." (Id.). Waldron told Officer Zdobinski that he had last seen Beaken in the company

16

of Ray and two other men, George Leone and a man named Keith. (Id.). Also, Waldron told the officer that Beaken had recently stayed at the Mt. View Inn with another male, Billy Matthews. (Id.).

In determining whether a petitioner has been prejudiced by counsel's conduct, a court must consider all aspects of the evidence proffered by the petitioner, including aspects both beneficial to the petitioner's case and those detrimental to his case. See Huffington v. Nuth, 140 F.3d 572, 578 (4th Cir. 1998). Here, Officer Zdobinski's testimony would not have established that Waldron and Beaken were paramours or that they shared any type of unique sexual relationship; in fact, it would have likely done just the opposite. The officer's testimony as to his conversation with Waldron would have shown that Beaken had provided him with sexual favors in exchange for drugs just like she did with many people, including Petitioner. It would have demonstrated that she associated with several different men during the time period at issue. Indeed, this testimony would have just as likely been detrimental to Petitioner's case, as it would have shown not only that Petitioner himself had a sexual relationship with Beaken (and one at least as substantial as hers with Waldron), it would have demonstrated that Beaken had sex with many people, and that she certainly was not in any kind of unique sexual or paramour relationship with Waldron.

17

The Court, at the time of trial, did not believe that Officer Zdobinski's testimony, as proffered by defense counsel, had much relevance.  What his actual testimony would have been, based on his report, would have had almost no relevance and, most likely, would have been at least partly detrimental to Petitioner's case. Accordingly, there is no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

### 3.  Failure to Introduce Evidence of Beaken's ARD

Many of Petitioner's remaining claims pertain to counsel's alleged failure to introduce evidence as to the fact that Beaken was a participant in Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program, and his alleged failure to properly cross examine Beaken on this subject.[7]  The bulk of subparts (e) and (f) and all of subparts (i) and (j) relate to this issue.  As with the other issues raised by Petitioner, this one has no merit.

During his cross examination of Beaken, counsel attempted to question her regarding a case in which she had been charged with

---

[7]     ARD is a pretrial diversionary program that suspends formal criminal proceedings before a conviction on the condition that the defendant will do some act or fulfill some requirements.  See Pa. R. Crim. P. 300 et seq.  If a defendant successfully completes the program, the charges are dismissed upon an order of court.  See Pa. R. Crim. P. 319.  Should the defendant fail to complete the ARD program, he or she waives the appropriate statute of limitations and right to speedy trial and may be prosecuted as initially charged. See Pa. R. Crim. P. 301, 312.

hindering apprehension of a suspect, and for which she was in the ARD program.  (July 31 Tr. at 71).  Counsel initially sought to introduce Beaken's ARD status as a prior conviction under FRE 609, but the Court refused to allow this.  (<u>Id.</u> at 71-74).  At the time, there was some confusion as to whether Beaken was still on ARD status or not.  The next day at trial, however, defense counsel, having realized that Beaken was still, in fact, under ARD, moved to inform the jury of this fact, stating:

> Although Your Honor ruled it's not a conviction under 609, the fact of being on probation provides bias for a person to cooperate with the Government in the fear of fabrication or being adversely treated while on probation.

(Aug. 1 Tr. at 4).  The Court refused to allow the evidence in, as there had been no evidence that she had been promised anything by the Government.  (<u>Id.</u>).  Counsel was, however, permitted to engage in limited questioning on cross examination regarding the facts underlying the charge, i.e., the charge of hindering apprehension of a suspect.  (July 31 Tr. at 79).  Moreover, counsel established that Beaken had admitted at a pretrial hearing that she was informed by the Government that she would not be prosecuted for the shooting incident.  (<u>Id.</u> at 70).

Petitioner now argues that counsel was ineffective in failing to get the evidence of Beaken's ARD status before the jury. The record, as set forth above, conclusively shows that counsel did

try to get this evidence before the jury, but that the Court would not permit it. While, as stated, there was initial confusion as to whether Beaken was still in ARD, this confusion was eventually resolved. Indeed, the Court's decision not to let evidence of Beaken's ARD status into evidence had nothing to do with the initial confusion, but rather, the fact that there was no evidence that Beaken had been promised anything by the Government. Counsel did examine Beaken as to the underlying facts and as to the fact that she had been told she would not be prosecuted for the shooting. Under these circumstances, the record demonstrates that counsel's conduct was not objectively unreasonable.[8]

However, even if the record did show unreasonable conduct, Petitioner would be unable to establish that he was prejudiced by the conduct. On appeal, Petitioner contended that his Sixth Amendment Confrontation Clause right was violated when this Court did not allow him to impeach Beaken's credibility with her ARD status. See United States v. Zemba, 59 Fed. Appx. 459 (3d Cir. 2003). The Court of Appeals concluded that this Court properly

---

[8]    Petitioner refers several times to an exchange where the Court stated to counsel, in regard to the admissibility of Beaken's ARD status under FRE 608 and 609: "And you should know. You should have done the work; I shouldn't have had to do the work. You should have done the work." (July 31 Tr. at 75). However, the Third Circuit, on appeal, upheld the Court's decision to exclude the evidence on those grounds. Accordingly, whatever research counsel should have done would have demonstrated nothing more than what the Court ultimately found and would have had no impact on the admissibility of the evidence under FRE 608 and 609.

found the evidence inadmissible under FRE 609. See id. at 461. The Appellate Court did, though, find that this Court may have erred by not allowing Beaken's credibility to be impeached with her ARD status. See id. at 463. However, the Court found that any such error was harmless. See id. at 466. Since it was harmless error that this evidence was not presented to the jury, Petitioner cannot establish that there was a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. See Bates v. Blackburn, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds); United States v. Haddock, 12 F.3d 950, 958 (10th Cir. 1993); Walkner v. United States, 129 F.3d 123 (8th Cir. 1997).[9] Accordingly, there is no merit to Petitioner's argument.

### 4.   Issues Regarding Promised Benefits

In subparts (e) and (f), Petitioner asserts, inter alia, that counsel was ineffective in failing to bring before the jury evidence of the benefits Waldron and Beaken would allegedly receive in exchange for their testimony and in failing to develop the proper foundation to get this evidence into the record. Further, in subpart (m), Petitioner argues that his counsel was ineffective in

---

[9]     To the extent Petitioner is also challenging counsel's failure to discuss the underlying facts of Beaken's hindering apprehension of a suspect charge, as noted above (and as acknowledged by the Third Circuit), counsel did indeed cross examine Beaken on this issue.

failing to object properly to the Government's improper assertion that neither Waldron nor Beaken had been promised any benefits by the Government in exchange for their testimony.  The record simply does not support such an allegation.  Counsel put before the jury evidence of alleged promised benefits as to both Waldron and Beaken.

As to Waldron, counsel, while the Court was addressing matters prior to the jury being brought in, informed the Court that although Waldron had testified that Government counsel had not informed him that he would advise the sentencing court in his pending case of his cooperation, this was not true, as Government counsel had so informed Waldron.  (Aug. 1 Tr. at 4).  Counsel pointed out to the Court that such evidence "goes directly to bias." (Id.).  After the Court refused to allow counsel to call Government counsel to the stand to refute Waldron's testimony, counsel moved to enter into evidence a July 9, 2001 letter from Government counsel to defense counsel regarding the representations made to Waldron.  (Id. at 5).  Counsel also supplied the Court with a United States Supreme Court case, Napue v. People of the State of Illinois, 360 U.S. 264 (1959), supporting the admissibility of the letter.

Pursuant to counsel's motion, the Court permitted counsel to admit a redacted copy of the letter as Defendant's Exhibit G and read it to the jury.  The letter from Government counsel stated:

> Regarding John Waldron, I am advising you he is currently incarcerated in the Westmoreland County prison based on a DUI conviction.  Even

22

though Mr. Waldron intends to testify in this case, I have not sought to influence the outcome of any of his current or past charges. However, I have advised Mr. Waldron should he testify truthfully in this case, I will personally advise any sentencing court of such truthful testimony should that occasion arise in the future.  To date, no such situation has occurred; no other promises have been made to Mr. Waldron.

(Aug. 1 Tr. at 30).  Accordingly, counsel did present evidence before the jury of the benefits promised to Waldron in exchange for his testimony.

As to Beaken, counsel, on cross examination, asked Beaken if she knew that she would not be charged in connection with the incident for which Petitioner was being tried.  She said that she did not know.  (July 31 Tr. at 70).  Counsel proceeded to impeach this testimony by presenting evidence that Beaken, at a preliminary hearing, had admitted that she had been told by the police and/or the district attorney's office that she would not be charged in the shooting incident.  (Id.).  While the Court cut off any further questioning on that issue, the purported promise made to Beaken was put before the jury.  Indeed, counsel referenced this promise, as well as the one made to Waldron, in his closing argument.  (Aug. 1 Tr. at 90-91).

The record, therefore, conclusively shows that the issue of what benefits were promised to those witnesses was placed before

23

the jury and that counsel's conduct, therefore, was objectively reasonable.[10]

## 5. **Beaken's Conversations with Law Enforcement**

Petitioner argues in subpart (1) that counsel was ineffective in failing to "bring before the court that Ms. Beaken and law enforcement officials held lengthy conversations in the hall outside the courtroom prior to her testifying against Petitioner." Petitioner does not produce any evidence as to what the conversations consisted of, nor does he contend that counsel's failure to produce evidence on this subject resulted in prejudice. In fact, counsel *did* question Beaken on this issue and received an affirmative answer from Beaken that she was discussing her testimony with Assistant United States Attorney ("AUSA") Almon Burke and Trooper Angelo Bonesio during the break. (July 31 Tr. at 79). He even referenced this fact during his closing argument. (Aug. 1 Tr. at 81-82). It is unclear what further actions counsel should have taken and how Petitioner was prejudiced by his failure to take these hypothetical actions. Accordingly, Petitioner's position has no merit.

---

[10]    Petitioner does not specifically cite to anywhere in the record where Government counsel stated that neither witness had been promised any benefit in exchange for their testimony, so it is unclear how defense counsel failed to object to any such representation. However, in any event, as discussed above, defense counsel presented substantial evidence of promised benefits and, therefore, would have provided contrary evidence to any claim made by the Government to the contrary.

## 6. Failure to Move for Change of Venue

In subpart (o), Petitioner alleges that his counsel was ineffective in failing to move for a change of venue due to the fact that the magistrate judge whose unoccupied office at which Petitioner allegedly shot was located in the judicial district in which Petitioner was tried. This claim is patently without merit. First, Petitioner offers no evidence as to why the decision not to file such a motion was anything other than a strategic decision by counsel. Indeed, it is the norm that criminal cases are tried in the judicial district in which the crimes were allegedly committed, and Petitioner does not establish anything particularly unusual in this case that would have warranted such a motion.

In any event, Petitioner cannot demonstrate prejudice. He claims that prejudice is "exhibited by the court's partiality toward the government evidenced by its improper evidentiary rulings concerning key issues in respect to the government's two [primary] witnesses." Essentially, Petitioner is arguing that this Court was partial to the Government because certain rulings did not go in his favor. Petitioner presents no evidence, though, that the Court's decisions were based on any improper motive. As such, there is no reasonable probability that, but for counsel's failure to seek a change of venue, the result of the proceeding would have been different.

### 7. Remaining Ineffective Assistance of Counsel Claims

Petitioner's remaining claims, contained in subparts (d), (g), (h), (k), (n), and (p), all address very broad and general issues regarding the failure of counsel to adequately prepare for and conduct the trial, cross examine witnesses, and object to this Court's evidentiary ruling. To the extent that these broad claims encompass the more specific claims discussed above, the Court rejects them for those same reasons. To the extent they are intended to address additional issues, they are simply too vague and conclusory to warrant further investigation. See United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

The Court will, though, address one additional allegation of ineffectiveness raised in Petitioner's brief that may be encompassed in these broad claims. Petitioner argues that his counsel should have admitted evidence of a polygraph taken by one of his witnesses, Thomas Miller. Miller testified at trial that he had been in a car with Beaken and Petitioner on several occasions, but that on no occasion had any shots been fired. (July 31 Tr. at 149-50). Petitioner contends that the polygraph that allegedly supports this statement should have been admitted into evidence to show that Miller was telling the truth and that Beaken was lying in her testimony that Petitioner did fire shots. However, Petitioner's claim has no merit because, before Miller even began his testimony, the District Court ruled that Miller's polygraph result would be

26

inadmissible. (Id. at 147-48). Therefore, Petitioner's claim is not, in essence, challenging the conduct of his counsel, but of the Court. Regardless, there is no prejudice because there is no reasonable probability that anything counsel would have done would have changed the Court's decision.

In sum, the Court finds that Petitioner has failed to establish that he was denied effective assistance of counsel under the Sixth Amendment and, therefore, finds no merit in Ground One of Petitioner's motion.

## B. Trial Court Error

The second ground on which Petitioner seeks relief is a combination of various errors he alleges this Court committed during this case. Much like Ground One, Ground Two contains several subparts. However, since each of the issues raised in Ground Two has either already been decided on direct appeal in this case or been procedurally defaulted, the Court finds no merit to any of these claims.

The issue raised in subpart (e) relates to the Court's refusal to allow evidence of Beaken's ARD status before the jury. As discussed above, the Third Circuit, on direct appeal, held that this Court may have erred by not allowing Beaken's credibility to be impeached with her ARD status, but held that such error was harmless. See Zemba, 59 Fed. Appx. at 463-66. The issues raised in

27

subparts (b) and (d) relate to the Court's refusal to continue the trial so as to allow Officer Zdobinski to testify.  The Third Circuit also affirmed the Court on this point.  <u>See</u> <u>id.</u> at 466-67. Subpart (f) relates to the Court's decision to give a generalized witness credibility instruction rather than the specific instructions regarding informants and accomplices requested by Petitioner.  The Circuit Court affirmed this decision.  <u>See</u> <u>id.</u> at 467.

Because all of these issues have been previously decided on appeal, Petitioner cannot relitigate these claims in a Section 2255 motion.  Absent exceptional circumstances, such as an intervening change in the governing substantive law, absent here, Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal."  <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (citations omitted); <u>Davis v. United States</u>, 417 U.S. 333 (1974) (intervening change in governing substantive law that makes petitioner's conviction and punishment unlawful constitutes exceptional circumstances that justify collateral relief under § 2255).

The rest of Petitioner's claims under Ground Two, to the extent that they are not too vague under <u>Dawson</u> to even warrant further examination, are procedurally defaulted because these issues could certainly have been raised on direct appeal.  "Section 2255 petitions are not substitutes for direct appeals and serve only to

protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." <u>United States v. Cepero</u>, 224 F.3d 256, 267 (3d Cir. 2000) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994)); <u>Young v. United States</u>, 124 F.3d 794, 796 (7th Cir. 1997). <u>See also</u> <u>United States v. Essig</u>, 10 F.3d 968, 979 (3d Cir. 1993) ("[Section] 2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal."). Arguments that could have been made on direct appeal cannot be raised in a Section 2255 motion unless the petitioner can demonstrate cause and prejudice. <u>See Essig</u>, 10 F.3d at 979 (holding that the cause and prejudice standard of <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982), "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted).

"In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." <u>Essig</u>, 10

29

F.3d at 979 (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)).

Here, Petitioner fails to set forth any basis for his failure to raise any of his remaining claims on appeal, and therefore, this basis for relief must be denied.[11]

Accordingly, Petitioner is not entitled to relief under Ground Two.

## C. Prosecutorial Misconduct

The third ground upon which Petitioner seeks relief is prosecutorial misconduct.    Petitioner argues in subpart (a) of Ground Three that the AUSA improperly represented that Beaken was no longer under the ARD program, foreclosing his counsel from cross examining Beaken concerning her bias.  He argues in subpart (b) that

---

[11]    Petitioner demonstrates some confusion as to the procedural default rule in his brief.    He seems to argue, primarily, that ineffective assistance of counsel can satisfy the "cause" prong under Frady.    Indeed, a defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel.    See DeRewal, 10 F.3d at 104.    In fact, a Section 2255 motion is the proper and preferred vehicle for alleging ineffective assistance of counsel.    See United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).    Thus, the procedural default rule does not apply to Petitioner's ineffective assistance of counsel claims. However, he must establish cause and prejudice for his other claims, and has failed to do so.  He does cite to McCleskey, a case in which the Supreme Court held that "[i]f the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim."    499 U.S. at 494-95.    Since the claims which are procedurally defaulted are either very closely related to issues that were addressed on direct appeal or elsewhere in this Opinion or very vague, it cannot be said that it would work a fundamental miscarriage of justice not to address the claims.

the AUSA improperly withheld Brady/Bagley material. Again, Petitioner's claims have no merit.

First, as discussed above, there was no reason that Petitioner could not have raised these issues on direct appeal, and he fails to show that some objective factor external to the defense impeded his efforts to raise these claims. See Essig, 10 F.3d at 979. Accordingly, these claims are procedurally defaulted.

In any event, there is no merit to the substance of Petitioner's claims. Under Section 2255, relief for prosecutorial misconduct is appropriate when the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Mangiardi, 173 F. Supp. 2d 292, 303 (M.D. Pa. 2001) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). See also United States v. Ratigan, 351 F.3d 957, 964 (9th Cir. 2003). "For due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. Mangiardi, 173 F. Supp. 2d at 303 (quoting Werts v. Vaughn, 228 F.3d 178, 197-98 (3d Cir. 2000)).

Petitioner's claims do not approach the level required to establish a denial of due process. As discussed above, although the AUSA indicated that he thought that Beaken's ARD had expired, this error was brought to the Court's attention, and the Court's decision not to permit evidence of Beaken's ARD had nothing to do with the

31

initial confusion as to the current status of the ARD. (Aug. 1 Tr. at 4). As to the second claim, Petitioner offers no concrete example of what materials were allegedly withheld, and does not indicate why such withholding would violate due process. Indeed, Petitioner acknowledges that he had received Officer Zdobinski's report of his interview of Waldron. Further, the letter from the AUSA to defense counsel regarding promises made in exchange for testimony to Waldron was admitted into evidence and read aloud to the jury.

In short, Petitioner's vague and general allegations do not establish a denial of due process or of the right to a fair trial, and Petitioner, hence, is not entitled to relief on Ground Three.

### D. **Cumulative Error**

In Claim Four, Petitioner argues that the cumulative effects of the prosecutorial misconduct, trial court error, and ineffective assistance of counsel alleged in Grounds One, Two, and Three "show Petitioner was denied his right to a fair trial, and denied the right to a fair trial before an impartial tribunal." The Court disagrees.

Individual errors which alone do not create constitutional error may be viewed in the aggregate to establish constitutional error. See Reid v. Vaughn, 109 Fed. Appx. 500 (3d Cir. 2004). "A

32

cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir. 2003). Petitioner must establish that: "(1) at least two errors were committed in the course of the trial; [and] (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Petitioner] a fundamentally fair trial." 109 Fed. Appx. at 500 (citing Alvarez v. Boyd, 225 F.3d 820, 824 (7th Cir. 2000).

As noted above, whatever possible ineffective assistance of counsel Petitioner may have received resulted in no prejudice to Petitioner. As for alleged trial court error, the Third Circuit upheld this Court's decisions on appeal; the only possible error found to have been made by this Court was held to be a harmless one. As discussed, the prosecutorial misconduct alleged by Petitioner, to the extent there was any, was not at all severe. Separately, these factors had minimal impact on the trial in this case. Taken together, they had almost equally minimal impact and cannot be said to have so infected the jury's deliberation that they denied Petitioner a fundamentally fair trial.

Accordingly, Petitioner is not entitled to relief on Ground Four.

### E.  **Constructive Ineffective Assistance of Counsel**

Petitioner's fifth purported ground for relief is somewhat similar to his fourth - he argues that "[d]ue to prosecutorial misconduct[] and trial court error in this case[,] Petitioner's counsel was rendered constructively ineffective."   The Court disagrees.

A constructive denial of counsel occurs when the defendant is deprived of "the guiding hand of counsel." Powell v. Alabama, 287 U.S. 45, 69, (1932).   This violation has occurred in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense. See Childress v. Johnson, 103 F.3d 1221, 1228 (5th Cir. 1997) (citing United States v. Cronic, 466 U.S. 648, 659 (1984)).   In addition, constructive denial will be found when counsel "fails to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659.   Accordingly, when the defendant can establish that counsel was not merely incompetent but inert, prejudice will be presumed.   See id. at 659.   "A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." Childress, 103 F.3d at 1229.   See also United States v. Gambino, 788 F.2d 938, 950 n.17 (3d Cir. 1986).

Petitioner's counsel was far from inert and, in fact, presented a vigorous defense on Petitioner's behalf at trial. Petitioner does not allege, much less provide evidence of, any conflict of interest. While Petitioner claims that he was harmed by prosecutorial misconduct, the conduct he alleges was not so egregious that he was in effect denied any meaningful assistance of counsel at all. Petitioner is thus entitled to no relief on this ground.

### F.  Alleged Third Circuit Errors

Petitioner, in Ground Seven, actually asks this Court to overrule the Third Circuit's findings in this case. Needless to say, this Court has no authority to do so. In any event, as discussed above, claims decided on direct appeal may not ordinarily be brought again in a Section 2255 motion absent exceptional circumstances. See DeRewal, 10 F.3d at 105 n.4.

### G.  Blakely and Booker Claims

Petitioner makes various arguments, under Grounds Six and Eight, pursuant to the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). Unfortunately for Petitioner, the Third Circuit, in Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005), held that the rule of law announced in Booker did not retroactively apply to

cases on collateral review.[12]   Specifically, the court held that Booker does not apply retroactively to motions under Section 2255 where the judgment was final as of January 12, 2005, the date Booker issued.  Since judgment in Petitioner's case was final in October of 2003, well before January 12, 2005, Booker does not apply to his case.  Accordingly, there is no basis for relief under Grounds Six and Eight.[13]

III.   **Conclusion**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety.  Further, this Court will not issue a certificate of appealability in this case.  A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. 2253 (c) (2).  For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

---

[12]   The court, in Lloyd, explained that it is Booker, and not Blakely, that applies to the Federal Sentencing Guidelines, under which Petitioner was sentenced.  Accordingly, it is Booker, and not Blakely, upon which Petitioner's claims must rely.

[13]   To the extent Petitioner is challenging the application of 18 U.S.C. § 924(e) under Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court notes that the Third Circuit has already rejected this challenge on direct appeal in this case.  Moreover, even if Blakely and/or Booker were retroactive, they have no application to the enhancement of sentences under Section 924(e).

An appropriate Order will be issued.

s/Alan N. Bloch
United States District Judge

Dated:    March 5, 2007

cc:       Joseph David Zemba
          #07109-068
          USP Beaumont
          P.O. Box 26030
          Beumont, TX 77720-6030

ecf:      Counsel of record